ENSIGN-BICKFORD REALTY CORPORATION *v.*
ZONING COMMISSION OF THE
TOWN OF SIMSBURY
(SC 15776)

Callahan, C. J., and Borden, Berdon, Norcott and Katz, Js.

Argued April 21—officially released July 7, 1998

*Brian R. Smith*, with whom was *Robert J. Sitkowski*, for the appellant (plaintiff).

*Jean M. D'Aquila*, with whom was *John B. Farley*, for the appellee (defendant).

*Opinion*

CALLAHAN, C. J. The sole issue in this certified appeal is whether the affordable housing land use appeals statute, General Statutes (Rev. to 1993) § 8-30g,[1] provides a right of direct appeal to the Appellate

---

[1] General Statutes (Rev. to 1993) § 8-30g provides in relevant part: "Affordable housing land use appeals procedure. (a) As used in this section: (1) 'Affordable housing development' means a proposed housing development (A) which is assisted housing or (B) in which not less than twenty per cent of the dwelling units will be conveyed by deeds containing covenants or restrictions which shall require that such dwelling units be sold or rented at, or below, prices which will preserve the units as affordable housing, as defined in section 8-39a, for persons and families whose income is less than or equal to eighty per cent of the area median income, for at least twenty years after the initial occupation of the proposed development; (2) 'affordable housing application' means any application made to a commis-

Court, as opposed to an appeal following a grant of certification to appeal by the Appellate Court. We conclude that the affordable housing land use appeals statute provides no right of direct appeal, and that such an appeal requires certification by the Appellate Court as in other zoning cases.

The following facts and procedural history are undisputed. The defendant, the zoning commission of the town of Simsbury, denied the application of the plaintiff, Ensign-Bickford Realty Corporation, to amend the Simsbury zoning map. In its application, the plaintiff sought to have the zoning designation of 138.75 acres

sion in connection with an affordable housing development by a person who proposes to develop such affordable housing; (3) 'assisted housing' means housing which is receiving, or will receive, financial assistance under any governmental program for the construction or substantial rehabilitation of low and moderate income housing, and any housing occupied by persons receiving rental assistance under chapter 138a or Section 1437f of Title 42 of the United States Code; (4) 'commission' means a zoning commission, planning commission, planning and zoning commission, zoning board of appeals or municipal agency exercising zoning or planning authority; and (5) 'municipality' means any town, city or borough, whether consolidated or unconsolidated.

"(b) Any person whose affordable housing application is denied or is approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units, specified in subparagraph (B) of subdivision (1) of subsection (a) of this section, contained in the affordable housing development, may appeal such decision pursuant to the procedures of this section. Such appeal shall be filed within the time period for filing appeals as set forth in sections 8-8, 8-9, 8-28, 8-30, or 8-30a, as applicable, and shall be made returnable to the superior court for the judicial district of Hartford-New Britain. Affordable housing appeals shall be heard by a judge assigned by the chief court administrator to hear such appeals. To the extent practicable, efforts shall be made to assign such cases to a small number of judges so that a consistent body of expertise can be developed. Appeals taken pursuant to this subsection shall be privileged cases to be heard by the court as soon after the return day as is practicable. Except as otherwise provided in this section, appeals involving an affordable housing application shall proceed in conformance with the provisions of said sections 8-8, 8-9, 8-28, 8-30, or 8-30a, as applicable. . . ." All references herein to § 8-30g are to that statute as revised to 1993.

of undeveloped land, located in Simsbury and owned by the plaintiff, changed from I-2 (general industrial zone)[2] to R-15. The zone change would have permitted the construction on the plaintiff's land of single family detached residences with a minimum lot area of 15,000 square feet.

The plaintiff's application for a zone change was accompanied by a conceptual site plan for a residential subdivision development of 115 single family detached residences. Under the site plan, twenty-three of the residences were to be set aside as "affordable housing units" within the meaning of General Statutes (Rev. to 1993) § 8-30g (a) (1) (B).[3] After a public hearing, the defendant concluded, inter alia, that "[t]he need to preserve the safety, health and welfare of the citizens of Simsbury far outweighs the need for affordable housing [at] this location . . . ." The defendant therefore denied the plaintiff's application for a zone change.

Pursuant to General Statutes § 8-8 (b)[4] and § 8-30g (b), the plaintiff appealed to the Superior Court from

[2] The principal uses permitted in the I-2 zone are office buildings, research laboratories, warehouses and manufacturing facilities.

[3] General Statutes (Rev. to 1993) § 8-30g (a) provides in relevant part: "As used in this section: (1) 'Affordable housing development' means a proposed housing development . . . (B) in which not less that twenty per cent of the dwelling units will be conveyed by deeds containing covenants or restrictions which shall require that such dwelling units be sold or rented at, or below, prices which will preserve the units as affordable housing . . . ." Public Acts 1995, No. 95-280, § 1, increased the minimum percentage of units required to be conveyed by such deeds from 20 percent to 25 percent, and § 3 of that act specified that the act would apply to any affordable housing application that was "pending on [July 6, 1995,] and for which the commission [had] not rendered a decision." Because the defendant rendered a decision on the plaintiff's application for a zone change on October 17, 1994, the plaintiff's application for a zone change constitutes an "affordable housing application" within the meaning of § 8-30g even though only 20 percent of the proposed dwellings are designated as affordable housing units.

[4] General Statutes § 8-8 (b) provides in relevant part: "Except as [otherwise] provided . . . any person aggrieved by any decision of a [zoning commission] may take an appeal to the superior court for the judicial district in which the municipality is located. . . ."

the defendant's denial of its application. The trial court found that there was sufficient evidence in the record to support the defendant's determination that denial of the plaintiff's application was necessary for the protection of substantial public interests relating to health and safety.[5] Consequently, it affirmed the defendant's decision.

The plaintiff subsequently filed a timely motion to open the judgment of the trial court, which was denied. Thereafter, pursuant to § 8-8 (o),[6] the plaintiff petitioned the Appellate Court for certification to appeal from the trial court's judgment and, simultaneously, filed a direct appeal to the Appellate Court from the judgment of the trial court. Following the Appellate Court's denial of the plaintiff's petition for certification to appeal, the defendant moved the Appellate Court for dismissal of the direct appeal for lack of subject matter jurisdiction. The Appellate Court, sitting en banc, granted the defendant's motion.

---

[5] General Statutes (Rev. to 1993) § 8-30g (c) provides: "Upon an appeal taken under subsection (b) of this section, the burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission that (1) the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record; (2) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (3) such public interests clearly outweigh the need for affordable housing; and (4) such public interests cannot be protected by reasonable changes to the affordable housing development. If the commission does not satisfy its burden of proof under this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it."

[6] General Statutes § 8-8 (o) provides: "There shall be no right to further review [of a judgment rendered by the trial court pursuant to § 8-8 (b)] except to the Appellate Court by certification for review, on the vote of two judges of the Appellate Court so to certify and under such other rules as the judges of the Appellate Court establish. The procedure on appeal to the Appellate Court shall, except as otherwise provided herein, be in accordance with the procedures provided by rule or law for the appeal of judgments rendered by the Superior Court unless modified by rule of the judges of the Appellate Court."

Pursuant to Practice Book § 4126, now Practice Book (1998 Rev.) § 84-1, the plaintiff thereafter petitioned this court for permission to appeal from the order of the Appellate Court dismissing its direct appeal. We granted certification limited to the following issue: "Is an appeal from a final judgment of the trial court rendered pursuant to General Statutes § 8-30g governing affordable housing land use appeals subject to the certification requirements of General Statutes § 8-8 (o)?" *Ensign-Bickford Realty Corp.* v. *Zoning Commission,* 243 Conn. 924, 701 A.2d 341 (1997).

On appeal, the plaintiff contends that the Appellate Court improperly concluded that the plaintiff's appeal to the Appellate Court from the trial court's judgment was subject to the certification requirement of § 8-8 (o). Specifically, the plaintiff maintains that § 8-30g (b) provides a right of direct appeal to the Appellate Court from the Superior Court judgment affirming the defendant's denial of the plaintiff's application for a zone change. We disagree.

I

A brief overview of the statutory scheme that governs zoning appeals is necessary to a resolution of the plaintiff's claim. " 'There is no absolute right of appeal to the courts from a decision of an administrative agency.' " *Fairfield* v. *Connecticut Siting Council,* 238 Conn. 361, 368, 679 A.2d 354 (1996); *Lewis* v. *Gaming Policy Board,* 224 Conn. 693, 699, 620 A.2d 780 (1993). " 'Appeals to the courts from . . . [administrative agencies] exist only under statutory authority . . . .' " *Charles Holdings, Ltd.* v. *Planning & Zoning Board of Appeals,* 208 Conn. 476, 479, 544 A.2d 633 (1988); see *Office of Consumer Counsel* v. *Dept. of Public Utility Control,* 234 Conn. 624, 640, 662 A.2d 1251 (1995); *Tazza* v. *Planning & Zoning Commission,* 164 Conn. 187,

190, 319 A.2d 393 (1972); *East Side Civic Assn.* v. *Planning & Zoning Commission*, 161 Conn. 558, 560, 290 A.2d 348 (1971). "Appellate jurisdiction is derived from the . . . statutory provisions by which it is created, and can be acquired and exercised only in the manner prescribed." (Internal quotation marks omitted.) *Charles Holdings, Ltd.* v. *Planning & Zoning Board of Appeals*, supra, 479; *Connecticut Resources Recovery Authority* v. *Commissioner of Environmental Protection*, 233 Conn. 486, 498, 659 A.2d 714 (1995).

In most cases, judicial review of a decision of an administrative agency is governed by the Uniform Administrative Procedure Act (UAPA). General Statutes § 4-166 et seq. Under the UAPA, a party aggrieved by a final decision of an administrative agency may appeal to the Superior Court. See General Statutes § 4-183 (a).[7] In addition, the UAPA generally provides a right of direct appeal from the judgment of the Superior Court to the Appellate Court. General Statutes §§ 4-184 and 51-197b (d).[8]

Judicial review of the actions and decisions of a zoning commission, however, is governed by General Statutes §§ 8-9 and 8-8 rather than by the appeals provisions of the UAPA. *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 129, 653 A.2d 798 (1995). Section 8-9 provides in relevant part that "[a]ppeals from zoning commissions . . . may be taken to the Superior Court and,

---

[7] General Statutes § 4-183 (a) provides: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal."

[8] General Statutes § 4-184 provides: "An aggrieved party may obtain a review of any final judgment of the Superior Court under this chapter. The appeal shall be taken in accordance with section 51-197b."

General Statutes § 51-197b (d) provides: "Except as provided in sections 8-8, 8-9 and 22a-43, there shall be a right to further review to the Appellate Court under such rules as the judges of the Appellate Court shall adopt."

upon certification for review, to the Appellate Court in the manner provided in section 8-8." Section 8-8, in turn, provides, in subsection (b), that "any person aggrieved by any decision of a [zoning commission] may take an appeal to the superior court for the judicial district in which the municipality is located," and, in subsection (o), that "[t]here shall be no right to further review except to the Appellate Court by certification for review . . . ." See General Statutes § 4-184 (administrative appeals shall be taken in accordance with General Statutes § 51-197b); General Statutes § 51-197b (d) (there shall be right of direct administrative appeal to Appellate Court except as provided in General Statutes §§ 8-8, 8-9 and 22a-43). Thus, like the UAPA, the statutory scheme that governs appeals from the actions and decisions of a zoning commission provides a right of appeal to the Superior Court, but unlike the UAPA, it does not provide a right of direct appeal from a judgment of the Superior Court to the Appellate Court. Instead, under §§ 8-8 and 8-9, an appeal may be taken to the Appellate Court from a final judgment rendered by the Superior Court *only* upon the Appellate Court's granting of certification for further judicial review.

Sections 8-8 and 8-9, however, are not the only statutes that provide for an appeal from a decision of a zoning commission. Section 8-30g, the affordable housing and land use appeals statute, provides in subsection (b) that "[a]ny person whose affordable housing application is denied . . . may appeal such decision pursuant to the procedures of this section. . . ." An "affordable housing application" is defined as "any application made to a commission in connection with an affordable housing development by a person who proposes to develop such affordable housing." General Statutes (Rev. to 1993) § 8-30g (a) (2). A "commission" is defined as any "zoning commission, planning commission, planning and zoning commission, zoning board

of appeals or municipal agency exercising zoning or planning authority." General Statutes (Rev. to 1993) § 8-30g (a) (4). An "[a]ffordable housing development" is defined as "a proposed housing development . . . in which not less than twenty per cent[9] of the dwelling units will be conveyed by deeds containing covenants or restrictions which shall require that such dwelling units be sold or rented at, or below, prices which will preserve the units as affordable housing . . . ." General Statutes (Rev. to 1993) § 8-30g (a) (1). The provisions of § 8-30g therefore govern appeals from administrative denials of "many different types of applications . . . brought to many different types of agencies"; *Kaufman* v. *Zoning Commission,* supra, 232 Conn. 137; including appeals from a decision of a zoning commission denying an affordable housing application for a zone change. See *West Hartford Interfaith Coalition, Inc.* v. *Town Council,* 228 Conn. 498, 508, 636 A.2d 1342 (1994). Section 8-30g (b), which explicitly addresses affordable housing land use appeals, provides in relevant part that "[a]ny person whose affordable housing application is denied . . . may appeal such decision pursuant to the procedures of this section. Such appeal shall be filed within the time period for filing appeals as set forth in sections 8-8,[10] 8-9,[11] 8-28,[12] 8-30,[13] or 8-30a,[14] as applicable, and shall be made

---

[9] See footnote 3 of this opinion.

[10] Section 8-8 explicitly governs appeals from decisions of zoning commissions, planning commissions, combined planning and zoning commissions and zoning boards of appeal. General Statutes § 8-8 (a) (2).

[11] Section 8-9 provides that appeals taken from legislative actions of zoning commissions and planning and zoning commissions are governed by the provisions of § 8-8.

[12] General Statutes § 8-28 provides in relevant part: "Any appeal from an action or decision of a planning commission shall be taken pursuant to the provisions of section 8-8."

[13] General Statutes § 8-30 has been repealed. Public Acts 1989, No. 89-356, § 18, effective October 1, 1989.

[14] General Statutes § 8-30a provides: "The provisions of section 8-8 shall apply to appeals from planning commissions or other final planning authori-

returnable to the superior court for the judicial district
of Hartford-New Britain. . . . Except as otherwise pro-
vided in this section, appeals involving an affordable
housing application shall proceed in conformance with
the provisions of said sections 8-8, 8-9, 8-28, 8-30, or 8-
30a, as applicable."

## II

The plaintiff claims that § 8-30g provides a right of
direct appeal to the Appellate Court from a final judg-
ment rendered by the Superior Court. The plaintiff does
not contend that § 8-30g explicitly provides a right of
direct appeal, but instead urges that we infer its exis-
tence from the language and purpose of § 8-30g and
from the language of § 51-197b (d).

"The interpretation of § 8-30g is a question of law for
the court. . . . We approach this question according
to well established principles of statutory construction
designed to further our fundamental objective of ascer-
taining and giving effect to the apparent intent of the
legislature. . . . In seeking to discern that intent, we
look to the words of the statute itself, to the legislative
history and circumstances surrounding its enactment,
to the legislative policy it was designed to implement,
and to its relationship to existing legislation and com-
mon law principles governing the same general subject
matter." (Internal quotation marks omitted.) *Kaufman*
v. *Zoning Commission,* supra, 232 Conn. 133; see *West
Hartford Interfaith Coalition, Inc.* v. *Town Council,*
supra, 228 Conn. 507–508; *North Haven* v. *Planning &
Zoning Commission,* 220 Conn. 556, 561–62, 600 A.2d
1004 (1991).

---

ties of any municipality whether or not such municipality has adopted the
provisions of this chapter and whether or not the charter of such municipality
or the special act establishing planning in such municipality contains a
provision giving a right of appeal from planning commissions, and any
provision of any special act, inconsistent with the provisions of said section,
is repealed."

## A

We begin with the language employed by the legislature. The last sentence of § 8-30g (b) provides in relevant part that "*[e]xcept as otherwise provided in this section,* appeals involving an affordable housing application shall proceed in conformance with the provisions of said sections 8-8, 8-9, 8-28 . . . or 8-30a, as applicable." (Emphasis added.) Section 8-30g sets forth specific ways in which affordable housing appeals proceed in a manner that does not conform to the provisions of §§ 8-8, 8-9, 8-28 and 8-30a. For example, under § 8-30g (b), only an affordable housing applicant may initiate an appeal from a decision of a commission, but under § 8-8, not only the applicant, but also aggrieved third parties, such as neighbors, may appeal from a decision of a zoning commission. Furthermore, § 8-30g (c) provides that in appeals taken pursuant to § 8-30g (b), the burden shall be on the *commission* "to prove, based upon the evidence in the record compiled before such commission that (1) the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record; (2) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (3) such public interests clearly outweigh the need for affordable housing; and (4) such public interests cannot be protected by reasonable changes to the affordable housing development. . . ."[15]

Section 8-30g (b) therefore not only establishes the general rule that "appeals involving an affordable housing application" are to proceed in conformance with

[15] In traditional zoning appeals, the *appellant* is required to show that the *commission* has acted arbitrarily, illegally or in abuse of its discretion. See *Irwin* v. *Planning & Zoning Commission,* 244 Conn. 619, 628, 711 A.2d 675 (1998); *Kaufman* v. *Zoning Commission,* supra, 232 Conn. 151; *Connecticut Sand & Stone Corp.* v. *Zoning Board of Appeals,* 150 Conn. 439, 442, 190 A.2d 594 (1963).

§§ 8-8, 8-9, 8-28 or 8-30a, as applicable, but also sets forth specific exceptions to that rule. "[W]e have long held that . . . exceptions to statutes are to be strictly construed with doubts resolved in favor of the general rule rather than the exception . . . ." *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, 236 Conn. 453, 473–74, 673 A.2d 484 (1996); see *Conservation Commission* v. *Price*, 193 Conn. 414, 424, 479 A.2d 187 (1984); *Aaron* v. *Conservation Commission*, 183 Conn. 532, 549, 441 A.2d 30 (1981); see also 2A J. Sutherland, Statutory Construction (5th Ed. Singer 1992) §§ 47.08 and 47.11. " '[W]here express exceptions are made, the legal presumption is that the legislature did not intend to save other cases from the operation of the statute.' " *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, supra, 476; see *Iovieno* v. *Commissioner of Correction*, 222 Conn. 254, 258, 608 A.2d 1174 (1992); *Chairman* v. *Freedom of Information Commission*, 217 Conn. 193, 200, 585 A.2d 96 (1991).

Section 8-30g (b) embodies the general rule that "appeals involving an affordable housing application" are to proceed in conformance with the provisions of §§ 8-8, 8-9, 8-28 and 8-30a, as applicable. Section 8-8, in turn, specifically provides in subsection (o) that an appeal may be taken to the Appellate Court only upon a grant of certification by that court, and §§ 8-9, 8-28 and 8-30a all incorporate § 8-8, and consequently § 8-8 (o), by specific reference. We conclude, therefore, that the general rule of § 8-30g (b) governing "appeals involving an affordable housing application" encompasses the certification requirement of § 8-8 (o). Moreover, nowhere does § 8-30g otherwise provide that such appeals are not subject to the certification requirement of § 8-8 (o). Because the legislature did not except § 8-8 (o) from the general rule embodied in § 8-30g (b), we also conclude that the language of § 8-30g (b) manifests the legislature's intention that "appeals involving an

affordable housing application" proceed in conformance with § 8-8 (o), as applicable. By its terms, § 8-8 (o) is applicable to land use appeals to the Appellate Court from judgments of the Superior Court, but not to appeals to the Superior Court from decisions of commissions. We therefore further conclude that the language of § 8-30g (b) indicates that the legislature intended that affordable housing appeals to the Appellate Court be subject to the certification requirement of § 8-8 (o).

The plaintiff argues, however, that the language of § 8-30g indicates that, although the legislature intended that § 8-30g (b) incorporate the provisions of §§ 8-8, 8-9, 8-28 and 8-30a pertaining to appeals to the Superior Court, it intended the opposite with respect to the provisions of those sections, such as § 8-8 (o), pertaining only to appeals to the Appellate Court. The plaintiff apparently reasons that the fact that § 8-30g (b) explicitly addresses affordable housing appeals to the Superior Court[16] but makes no direct reference to affordable housing appeals to the Appellate Court indicates that the word "appeals" in the phrase "appeals involving an affordable housing application" in the last sentence of § 8-30g (b) was intended to refer only to appeals to the Superior Court and not to appeals to the Appellate Court. In effect, the plaintiff urges us to construe the last sentence of § 8-30g (b) as follows: Except as otherwise provided in this section, appeals *to the Superior Court* that involve an affordable housing application, *and not such appeals to the Appellate Court*, shall proceed in conformance with the provisions of sections 8-8, 8-9, 8-28 or 8-30a. Narrowly construing the word "appeals"

---

[16] General Statutes (Rev. to 1993) § 8-30g (b) provides in relevant part: "Any person whose affordable housing application is denied . . . may appeal such decision pursuant to the procedures of this section. Such appeal . . . shall be made returnable to the superior court for the judicial district of Hartford-New Britain. . . ."

in the last sentence of § 8-30g (b) to include appeals to the Superior Court and to exclude appeals to the Appellate Court, however, has bizarre and inconsistent consequences. Section 8-30g (c) shifts the burden of proof in *"an appeal taken under subsection (b) of [§ 8-30g]"* (emphasis added) from the affordable housing applicant to the commission, and further requires the commission "to prove, based upon the evidence in the record compiled before such commission that (1) the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record; (2) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (3) such public interests clearly outweigh the need for affordable housing; and (4) such public interests cannot be protected by reasonable changes to the affordable housing development. . . ." Under the plaintiff's construction of the word "appeals" in § 8-30g (b), the standard established in § 8-30g (c) would apply to an affordable housing appeal to the Superior Court, but not to any subsequent appeal to the Appellate Court. That would be a bizarre construction because, under that view, although judicial review of a commission's decision would be on the same basis—the evidence before the commission—in both the Superior Court and the Appellate Court, only in the Superior Court would the commission have the burden of establishing that the requirements of § 8-30g (c) were satisfied.

"It is . . . a rule of statutory construction that those who promulgate statutes or rules do not intend to promulgate statutes or rules that lead to absurd consequences or bizarre results." (Internal quotation marks omitted.) *Ferrigno* v. *Cromwell Development Associates*, 244 Conn. 189, 201, 708 A.2d 1371 (1998); *State* v. *DeFrancesco*, 235 Conn. 426, 437, 668 A.2d 348 (1995). "[A] statute is passed as a whole and not in parts or

sections and is animated by one general purpose and intent." (Internal quotation marks omitted.) *Ferrigno* v. *Cromwell Development Associates*, supra, 202; *State* v. *Spears*, 234 Conn. 78, 91, 662 A.2d 80, cert. denied, 516 U.S. 1009, 116 S. Ct. 565, 133 L. Ed. 2d 490 (1995), quoting 2A J. Sutherland, supra, § 46.05, p. 103. "If there are two possible interpretations of a statute, we will adopt the more reasonable construction over one that is unreasonable." (Internal quotation marks omitted.) *Ferrigno* v. *Cromwell Development Associates*, supra, 202; *Coley* v. *Camden Associates, Inc.*, 243 Conn. 311, 320, 702 A.2d 1180 (1997); *Turner* v. *Turner*, 219 Conn. 703, 713, 595 A.2d 297 (1991). We conclude, therefore, that the language of § 8-30g indicates that the legislature intended that the word "appeals" in the last sentence of § 8-30g (b) apply to all appeals involving affordable housing applications, not just such appeals to the Superior Court, and that, consequently, the language of § 8-30g (b) manifests the legislature's intention that appeals to the Appellate Court pursuant to § 8-30g (b) proceed in conformance with the certification requirement of § 8-8 (o).

B

The circumstances surrounding the enactment of § 8-30g and its legislative history buttress our conclusion. In 1987, Governor William A. O'Neill appointed a blue ribbon commission on housing to study Connecticut's affordable housing crisis and to develop recommendations for solving the problem.[17] In its 1989 final report, the blue ribbon commission recommended to the governor and the General Assembly, inter alia, that a separate affordable housing land use appeal procedure be

---

[17] See generally P. Vodola, "Connecticut's Affordable Housing Appeals Procedure Law in Practice," 29 Conn. L. Rev. 1235, 1240 (1997); M. Westbrook, "Connecticut's New Affordable Housing Appeals Procedure: Assaulting the Presumptive Validity of Land Use Decisions," 66 Conn. B.J. 169, 171 (1992).

adopted. State of Connecticut Blue Ribbon Commission on Housing Report and Recommendations to the Governor and General Assembly, February 1, 1989, p. A-6. We previously have concluded that "to the extent that the [blue ribbon] commission's recommendations served as a basis for § 8-30g, [its] report is illustrative of the legislature's intent." *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, supra, 228 Conn. 510. The blue ribbon commission's report specifically recommended that affordable housing appeals to the Appellate Court "be by certiorari, *as under existing law*." (Emphasis added.) State of Connecticut Blue Ribbon Commission on Housing Report and Recommendations to the Governor and General Assembly, February 1, 1989, p. A-6.

The plaintiff maintains that the legislature's failure to incorporate the blue ribbon commission's recommendation explicitly into § 8-30g indicates that the legislature intended the opposite. The initial version of House Bill No. 7270, the bill eventually enacted as Public Acts 1989, No. 89-311, and codified as § 8-30g, did in fact incorporate that recommendation by providing at lines 120 and 121 that "[t]here shall be no right to further review except to the appellate court by certification for review . . . ." Raised Bill No. 7270, § 2 (e). During the committee hearing on Raised Bill No. 7270, Professor Terry Tondro, cochairperson of the land use subcommittee of the blue ribbon commission, recommended, however, that "[m]ost of section 2a . . . be deleted *because it simply restates the statutory rules that apply to all land use appeals. . . .* The same is true for lines . . . 117 through 136." (Emphasis added.) Conn. Joint Standing Committee Hearings, Planning and Development, Pt. 1, 1989 Sess., p. 255. " '[I]t is now well settled that testimony before legislative committees may be considered in determining the particular problem or

issue that the legislature sought to address by the legislation.' " *Ferrigno* v. *Cromwell Development Associates*, supra, 244 Conn. 197; see *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 450, 692 A.2d 742 (1997); *State* v. *Ledbetter*, 240 Conn. 317, 337, 692 A.2d 713 (1997). The blue ribbon commission's recommendation and Tondro's comment that the language adopting that recommendation be deleted from the bill because it simply restated existing land use law, coupled with the fact that the legislature provided in § 8-30g (b) that appeals involving affordable housing applications shall proceed in conformance with the existing land use statutes, provide further evidence that the legislature intended that such appeals proceed in conformance with the certification requirement of § 8-8 (o).

Disregarding the legislative history, the plaintiff contends that we should infer the existence of a right of direct appeal to the Appellate Court pursuant to § 8-30g because, in the plaintiff's view, the certification requirement of § 8-8 (o) contravenes the purpose of § 8-30g. We are unpersuaded.

"Our review of the statute's legislative history reveals that the key purpose of § 8-30g is to encourage and facilitate the much needed development of affordable housing throughout the state. See, e.g., 32 S. Proc., Pt. 12, 1989 Sess., p. 4051, remarks of Senator Fred Lovegrove, and p. 4058, remarks of Senator Kevin Sullivan." *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, supra, 228 Conn. 511. We agree with the plaintiff that a right of direct appeal to the Appellate Court would accord with that statutory purpose in cases in which an affordable housing applicant has meritorious grounds for taking such an appeal. Construing § 8-30g to incorporate the certification requirement of § 8-8 (o), however, does not preclude an affordable housing applicant from taking an appeal to the Appellate Court. It simply requires the applicant to demonstrate, by way

of petition for certification, why further judicial review is merited. See Practice Book § 4142.1, now Practice Book (1998 Rev.) § 81-2.[18] Furthermore, in cases in which a judgment has been rendered by the trial court in favor of the applicant, a right of direct appeal to the Appellate Court would seriously contravene the statutory purpose. In such cases, a right of direct appeal to the Appellate Court would enable a commission not only to delay unduly the development of affordable housing but also to increase the affordable housing applicant's expenses. See *Kaufman* v. *Zoning Commission*, supra, 232 Conn. 141 (declining to interpolate into § 8-30g provision that would impose significant expenses on applicants). We conclude, therefore, that the legislature determined that an opportunity for discretionary appellate review of an affordable housing decision, after a full hearing in the Superior Court, would strike the proper balance.

### C

The plaintiff also maintains that the language of § 51-197b (d) indicates that the legislature intended that § 8-30g (b) not incorporate the certification requirement

---

[18] Practice Book § 4142.1, now Practice Book (1998 Rev.) § 81-2, provides in relevant part: "(a) A petition for certification shall contain the following sections in the order indicated here:

"(1) A statement of the questions presented for review, expressed in the terms and circumstances of the case but without unnecessary detail.

"(2) A statement of the basis for certification identifying the specific reasons why the appellate court should allow the extraordinary relief of certification. These reasons may include but are not limited to the following:

"(A) The court below has decided a question of substance not theretofore determined by the supreme court or the appellate court or has decided it in a way probably not in accord with applicable decisions of the supreme court or the appellate court.

"(B) The decision under review is in conflict with other decisions of the court below.

"(C) The court below has so far departed from the accepted and usual course of judicial proceedings, or has so far sanctioned such a departure by any other court, as to call for an exercise of the appellate court's supervision.

"(D) A question of great public importance is involved. . . ."

of § 8-8 (o). At the time § 8-30g was enacted; Public Acts 1989, No. 89-311, §§ 1, 4; General Statutes (Rev. to 1989) § 51-197b (d) provided in relevant part: "Except as provided in sections 8-8, 8-9, 8-28 and 8-30, there shall be a right of further review to the appellate court . . . ." Relying on the presumption that the legislature acts with the intention of creating a consistent body of law; see *Warner* v. *Leslie-Elliott Constructors, Inc.*, 194 Conn. 129, 134, 479 A.2d 231 (1984); the plaintiff argues that had the legislature intended that appeals to the Appellate Court brought pursuant to § 8-30g proceed by certification only, the legislature would have amended § 51-197b (d) to provide: "Except as provided in sections 8-8, 8-9, 8-28 . . . 8-30 *and 8-30g*, there shall be a right to further review to the appellate court . . . ." (Emphasis added.) Although such an amendment to § 51-197b (d) would not have been inconsistent with our conclusion that the legislature intended that affordable housing appeals to the Appellate Court be by certification only, *as under existing law*, the legislature's failure to amend § 51-197b (d) to refer directly to § 8-30g is similarly not inconsistent with that conclusion. Consequently, the fact that § 51-197b (d) was not amended at the time § 8-30g was enacted is not persuasive evidence that the legislature intended that § 8-30g provide a right of direct appeal to the Appellate Court.

The plaintiff further argues that the legislature's failure to include a reference to § 8-30g in § 51-197b (d) when, subsequent to the passage of § 8-30g, the references to §§ 8-28 and 8-30 were deleted from § 51-197b (d) also indicates that the legislature intended that § 8-30g provide a right of direct appeal to the Appellate Court. See Public Acts 1989, No. 89-356, § 7, codified at General Statutes (Rev. to 1991) § 51-197b (d). Even if we assume, without deciding, however, that a subsequent, unrelated amendment to § 51-197b (d) somehow

is instructive of the legislature's intention regarding § 8-30g, we are not persuaded. Public Acts 1989, No. 89-356 did not merely delete the references to §§ 8-28 and 8-30 from § 51-197b (d). It also repealed § 8-30; Public Acts 1989, No. 89-356, § 18; and amended § 8-28 to provide that "[a]ny appeal from an action or a decision of a planning commission *shall be taken pursuant to the provisions of section 8-8 . . . .*" (Emphasis added.) Public Acts 1989, No. 89-356, § 2, codified at General Statutes (Rev. to 1991) § 8-28. Thus, rather than manifest an intention to incorporate a right of direct appeal to the Appellate Court into § 8-30g, the legislature's failure to include a reference to § 8-30g in § 51-197b is entirely consistent with its deletion of the reference to § 8-28, a statute that now, like § 8-30g, incorporates by reference the certification requirement of § 8-8 (o).

Finally, the plaintiff maintains that the legislature's failure to include a reference to § 8-30g in § 51-197b (d) as revised to 1995 when that statute was amended in 1995 to include a reference to General Statutes § 22a-43;[19] Public Acts 1995, No. 95-151, § 3; indicates that § 8-30g was intended to provide a right of direct appeal to the Appellate Court. Again, even if we assume, without deciding, that the 1995 amendment to § 51-197b (d) somehow is instructive of the legislature's intention in 1989 regarding § 8-30g, we are not persuaded. In addition to amending § 51-197b (d) to include a reference to § 22a-43, Public Acts 1995, No. 95-151, § 1, amended § 22a-43, as revised to 1995, by adding subsection (d), which provides in relevant part that "[t]here shall be no right of further review except to the appellate court by certification for review . . . ." Rather than incorporate § 8-8 by reference, as §§ 8-28 and 8-30g do, § 22a-43,

---

[19] General Statutes § 22a-43, which provides for administrative appeals from the decisions of a wetlands commission, provides in relevant part: "(d) There shall be no right to further review except to the Appellate Court by certification for review in accordance with the provisions of subsection (o) of section 8-8."

like §§ 8-8 and 8-9, specifically provides that Appellate Court review is by certification only. Thus, the legislature's addition of a reference to § 22a-43 in § 51-197b (d) is consistent with the references in that statute to §§ 8-8 and 8-9, just as the legislature's omission of a reference to § 8-30g from § 51-197b (d) is consistent with the deletion of the reference in § 51-197b (d) to § 8-28. We conclude, therefore, that the language of § 51-197b (d) is consistent with our construction of § 8-30g as incorporating the certification requirement of § 8-8 (o) rather than providing an implied right of direct appeal to the Appellate Court.

In summary, on the basis of the language of § 8-30g, its legislative history, the circumstances surrounding its enactment and the purpose for which it was enacted, we conclude that the legislature intended that an appeal to the Appellate Court from a judgment rendered by the Superior Court pursuant to § 8-30g be subject to the certification requirement of § 8-8 (o). Having denied the plaintiff's application for certification to appeal from the judgment of the trial court, the Appellate Court lacked jurisdiction over the plaintiff's direct appeal.

The judgment of the Appellate Court dismissing the plaintiff's appeal is affirmed.

In this opinion the other justices concurred.