[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Before the court is the plaintiffs' May 25, 2000 appeal from the defendant Milford Planning and Zoning Commission's denial of a petition for special exception filed by the plaintiffs, James Caserta and Diane Caserta. The application relates to property, generally known as 118-128 Broadway, Milford, Connecticut.
In January 2000, the plaintiffs submitted their application with the Commission. The plaintiffs' application sought permission to construct an affordable hosing project and to raze the existing structure. The plaintiffs bring their appeal pursuant to General Statutes § 8-30g, the Affordable Housing Land Use Appeals Act.[1]
 Procedural History
The plaintiffs commenced this appeal on May 18, 2000, by service of process upon Alan Jepson, city clerk, and Philip Vetro, Chairman of the Zoning Board. On May 25, 2000, the plaintiffs filed their appeal, with a CT Page 15941-id return date of June 27, 2000 in the Superior Court, judicial district of Ansonia-Milford at Milford. The Commission filed its answer and the return of record on July 19, 2000. The plaintiffs filed their brief on December 26, 2000 and the Commission filed its brief on January 22, 2001. On April 4, 2001, this appeal was transferred to Superior Court, judicial district of New Britain, tax and administrative appeals session, per order of the court, Cohn, J. The matter was subsequently assigned to this court which heard argument on the appeal on August 15, 2001.
 Facts
The plaintiffs are the owners of the subject property. The property is located in an R-5 zone which is restricted to one family residential homes. Although there are properties located in the same zone which do not comply with the R-5 requirements, the parties do not characterize those properties as legally or illegally nonconforming.
Currently located on the property are two buildings. Located in the front building are three rental units and the rear building consists of two additional rental units. The plaintiffs proposed to demolish these two buildings and replace them with a single building affordable housing project consisting of six units.
Within the proposed six-unit affordable housing project, four of the units would be two-bedroom units and the remaining two proposed units would be one-bedroom units. One of the one-bedroom units and one of the two-bedroom units would be designated as affordable units. Along with the six-unit proposed building, the proposal calls for fourteen on-site parking spaces. Additionally, the proposal calls for a caveat to be placed on the land records of the subject property designating the project as affordable housing or, alternatively, to provide yearly updates to the city of Milford regarding compliance with the affordable housing statute.
The record reveals that the Commission held a public hearing on the plaintiffs' application on March 21, 2000. The application was reviewed by the Planning Zoning Commission, Subdivision Special Permits Committee (Committee) on March 28, 2000 and April 25, 2000. The Commission noticed and approved the plaintiffs' application with the restriction that the plaintiffs be permitted to build only two units based on their statement that there is no adverse impact on the viability of the project or the affordability of the units. CT Page 15941-ie
 Jurisdiction
A. Timeliness and Service of Process
On May 18, 2000, the plaintiffs served process on the city clerk and on the chairperson of the Commission, which was less than fifteen days after notice of the Commission's decision on the application was published in the local newspaper. This appeal, therefore, is timely and the proper parties were served, pursuant to General Statutes §§ 8-8 (b), (e), 8-30g
(b) (Rev. 1999) (now § 8-30g (f)).
B. Citation
For appeals brought pursuant to § 8-8, and, hence, § 8-30g, the citation is analogous to the writ used to commence a civil action and directs a proper officer to summon the agency whose decision is being appealed. See Tolly v. Dept. of Human Resources, 225 Conn. 13, 18-19,621 A.2d 719 (1993); Sheehan v. Zoning Commission 173 Conn. 408, 413,378 A.2d 519 (1977) (citation is direction to officer to summon agency whose decision is being appealed). The file contains a proper citation.
C. Standing/Aggrievement
Under § 8-30g (b) (Rev. 1999) (now § 8-30g (f)), "[a]ny person whose affordable housing application is . . . approved with restrictions which have a substantial impact on the viability of the affordable housing development . . . may appeal such decision pursuant to the procedures of this section." Thus, "under § 8-30g (b) [(Rev. to 1999) (now § 8-30g (f))], only an affordable housing applicant may initiate an appeal from a decision of a commission. . . ." Ensign-Bickford RealtyCorp. v. Zoning Commission, 245 Conn. 257, 267, 715 A.2d 701 (1998). An "affordable housing application" is defined by General Statutes §8-39a.[2]
The jurisdictional analysis does not end there. Section 8-30g (b) (Rev. to 1999) (now § 8-30g (f)) further provides that "[e]xcept as otherwise provided in this section, appeals involving an affordable housing application shall proceed in conformance with the provisions of said sections 8-8, 8-9, 8-28, 8-30, or 8-30a, as applicable."
In Quarry Knoll II Corp. v. Planning Zoning Commission, 256 Conn. 674, ___ A.2d ___ (2001), the Supreme Court reviewed, in part, the trial court's finding that the plaintiffs, among whom were the affordable CT Page 15941-if housing applicant, were aggrieved by the decision of the Commission denying their affordable housing application. The court ultimately held on this particular issue that the trial court's finding of aggrievement was supported by sufficient evidence. Id., 704. The conclusion to be drawn from the Supreme Court's holding is that the language of § 8-30g
(b) (Rev. to 1999) (now § 8-30g (f)) has the effect of importing the requirement that the plaintiffs allege and prove aggrievement.[3]
Therefore, to maintain an affordable housing appeal, proof of aggrievement is essential. Quarry Knoll II Corp. v. Planning ZoningCommission, supra, 256 Conn. 702-703. "A person does not become aggrieved until the zoning authority has acted, and the question of aggrievement is a jurisdictional one for the court. . . . To be entitled to an appeal, the plaintiff[s] [were] required to allege and prove that [they were] aggrieved by the decision of the commission. . . . The fundamental test by which the status of aggrievement . . . is determined encompasses a well-settled twofold determination. First, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest. has been adversely affected. . . ." (Citations omitted; internal quotation marks omitted.) Id.
In order to appeal the decision of a Commission approving an affordable housing application with restrictions, the plaintiffs, to fulfill the jurisdictional prerequisites, must meet the requirements of § 8-30g
and must plead and prove aggrievement. In the present case, the parties do not contest, and the court finds, that the plaintiffs are affordable housing applicants who submitted an affordable housing application that was approved with restrictions and that they are the owners of the subject property.
The defendant, however, challenges the plaintiffs' `standing' to bring the appeal with respect to the impact of the approval with restrictions on the proposal before the board. The defendant frames this preliminary issue as "whether [the Commission's approval with restrictions] . . . had a "substantial adverse impact' on either "the viability of the affordable housing development' or on "the degree of affordability of the affordable dwelling units . . . contained in the affordable housing development." CT Page 15941-ig (Defendant's Trial Brief, p. 4.) The Commission further maintains that there are no reported decisions that set forth which party bears the burden of proving such substantial adverse impacts or in what forum this particular issue is to be raised, i.e., before the Commission or the Superior Court. The Commission suggests that the court should resort to general zoning appeal dictates, which the Commission contends, would place the burden on the plaintiffs to prove substantial adverse impacts and to do so on the record.
As a preliminary matter, the plaintiffs, as previously noted, must establish the capacity to prosecute this appeal under § 8-30g and that they are aggrieved. The issue as framed by the defendants, i.e., whether the approval with restrictions impacted the viability of the project, is essentially the same issue that the plaintiffs must prove under the second prong of the twofold aggrievement test, i.e., whether the party claiming aggrievement can establish the possibility of an injury to a specific personal and legal interest. Proof of one, therefore, under most circumstances, would satisfy the plaintiffs' burden on the other.[4]
The court agrees with the Commission that it is the plaintiffs' burden to establish his standing to appeal.[5] The plaintiffs may fulfill that burden either at trial or on the record. Saranor Apartments v. Planning Zoning Board, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 052740 (November 24, 1997, Ripley, J.T.R.).
In Saranor Apartments v. Planning Zoning Board, supra, the defendant took the position that because the record was devoid of evidence of a substantial adverse effect, the plaintiffs lacked standing to commence the appeal. The court rejected the defendant's argument holding that "[i]t seems clear from a reading of . . . § 8-30g (b) [now § 8-30g
(f)], that the question of adverse financial impact is determinedfollowing action of the Board. . . ." (Emphasis in original) Id. The court noted that "[i]t is questionable whether such evidence is appropriate for presentation before any Planning and Zoning Commission, although it may well come out during hearings on the application as an incidental consideration." Id. Furthermore, "the plaintiff could not possibly anticipate the action of the Board and probable financial impact until the hearings on the application were concluded and the Board acted upon the application." Id. Courts have adopted this procedural format. See, e.g., Mutual Housing Assn. v. Trumbull Superior Court, judicial district of New Britain, Docket No. 492254 (August 24, 1999, Koletsky,J.) (permitting introduction of evidence concerning impact of commission's approval of an affordable housing site plan application with CT Page 15941-ih restrictions on the degree of affordability of the affordable dwelling.)
Although the plaintiffs may satisfy their burden to establish standing by adducing evidence at trial, courts may determine standing issues in affordable housing cases on the record. In Glastonbury Affordable HousingDevelopment, Inc. v. Town Council, Superior Court, judicial district of Hartford, Docket No. 543581 (September 4, 1996, Leheny, J.), the plaintiff's application for a zone change in connection with an affordable housing proposal was denied by the town council. On appeal, the town council argued that the plaintiff lacked standing to prosecute the appeal pursuant to § 8-30g. Specifically, the town council argued that the appeal procedure fashioned in § 8-30g was inapplicable because "GLAHD is not a person who proposes to develop affordable housing within the meaning of [§] 8-30g (b) [(Rev. 1999)] . . . [and that] GLAHD failed to give meaningful assurance that the property would be used to build affordable housing." (Internal quotation marks omitted.) Id. The court rejected the town council's standing argument by culling information from the record submitted on appeal. Id. ("The court finds that there . . . [are] sufficient indicia in the record that GLAHD intends to build affordable housing . . .
Applying that standard to this case in order to examine the issue of standing, the court finds that the plaintiffs at trial did not present any evidence as to how the Commission's approval of the application with restrictions had a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units. Accordingly, the court must determine from the record to what extent, if any, the application and supporting documentation as well as testimony from subsequent hearings reveal "a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units. . . ."
After conducting a thorough review of the documentary and testimonial evidence comprising the record, the court concludes that there was no evidence adduced either at the trial or before the Commission that the Commission's approval of the application with restrictions had "a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units. . . ." At best, the record indicates that the applicant was not prepared to present the type of evidence required to establish his standing to bring the present appeal.
The Commission takes the position that the plaintiffs admitted that the CT Page 15941-ii restriction on the application to two affordable housing units would have no adverse impact on the project or the affordability of the units. Thus, the Commission argues, § 8-30g (b) is inapplicable. The plaintiffs argue that the statement upon which the Commission relies was a nonresponsive answer to a "disjointed and confusing" question, which the plaintiffs misunderstood.
The Commission approved the application for a special exception with the restriction that "the applicant be permitted to build two units based on his statement that there is no adverse impact on the viability of the project or the affordability of the units if two units are approved." At the March 21, 2000 public hearing, the plaintiffs stated "[t]here is no adverse impact," as a response to a question regarding the substantial adverse impact on the development if there were only two units. The essence of the Commission's claim is that this statement effectively deprives the plaintiffs of standing to prosecute this action pursuant to § 8-30g.
The specific statement referenced by the Commission was taken from a colloquy between Attorney Conte, representing the applicant, and Mr. Piselli, a member of the Commission, and reads as follows:
"Piselli: Um, to the attorney. I have a question. What would be the substantial adverse impact of the viability of the development if the affordability of this, let me start over. What would be the substantial adverse impact on the viability of the development of this affordability of this unit, of the units, if it was only two?
"Conte: There is no adverse impact.
"Piselli: Okay. How "bout if there's three units?
"Conte: There is no adverse impact.
"Piselli: Then why must there be six?
"Conte: Why must there be six?
"Piselli: Yeah.
"Conte: That's what the proposal is. It, you know, meets the regulation. CT Page 15941-ij
"Piselli: Well, I have another question.
"Conte: The number are determined, the number of units are determined by the statutory formula. It's the statutory formula that, that defines the number of units that need to be affordable."
The language cited by the Commission when viewed in the context of the particular line of questioning, although ostensibly supporting the Commission's position, in fact undercuts it. The proposal for the special exception to construct an affordable housing project called for two out of six units to be affordable housing units. In the final answer responsive to Mr. Piselli's line of questioning, Attorney Conte stated that the number of units, i.e., affordable units, are determined by a statutory formula. Since the proposal is for two affordable housing units, it follows that there would be no substantial adverse impact if the Commission approved the two affordable housing units. It appears to the court that Attorney Conte and Mr. Piselli were misunderstanding each other.
Further discourse at the March 21, 2000 public hearing supports the court's finding that Attorney Conte's statement was not addressing whether a restriction to two units total would have "a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units. . . ." This discourse also, however, establishes that the record is devoid of information regarding the impact of an approval with a restriction to two units total. The discourse between Attorney Conte and Mr. Wright, also a member of the Commission, is as follows:
"Wright: Through the Chair to Mr. Conte. If we were to restrict your project tonight, how would it affect the viability of the development or the affordability of the affordable units?
"Conte: What do you mean by restrict?
"Wright: If we were to say, well, let's talk about four units, not six.
"Conte: What impact would it have? I'm not sure what impact it would have, cause it was never planned to have four units. It's, you know, that's really a difficult question to answer at this point. CT Page 15941-ik
"Wright: Have you considered less that six units? Why do you have to have six units?
"Conte: That's what was proposed, that's the way it was designed. Um, it's a, it's a two story structure, so it's either four, you know, two, four or six.
The discourse resumed later during the public hearing:
"Wright: Then let me ask you the question I asked earlier. Ah, I asked why not four units and you said because the project says it has to be six. Well, who says that? What drives the project to arriving at that number six?
"Conte: No, I didn't say, I didn't say the project has to be six, I said it's either two, four or six, because it's a two story structure and the proposal is for six units. It was never considered what the, what the impact of the proposal would be if it was reduced to four. Because if it was reduced to four, then perhaps only one of the units would have to be affordable, based on the formula."
The dialog between Attorney Conte and Mr. Wright regarding this issue concluded:
"Wright: I think I'm just trying to be considerate of the neighborhood. My other question is, with the, I'm still stuck on why the six units. Ah, could you give me a number that could be built that would still make the project, um, economically viable?
"Conte: No, I won't do that. No, I can't do that.
"Wright: Why can't you do that?
"Conte: Why can't I?
"Wright: I'm just curious?
"Conte: Well, because I had no part in the planning of this project and I don't believe that it's necessary for us to come in here and say, well, if we do four, four is agreeable and four will allow us to make a profit or break even, or whatever. The CT Page 15941-il calculation was done in terms at what it would cost to fund this project, build it and manage it and the number is six.
The significance of the public hearing testimony is two-fold. First, the testimony elicited from Attorney Conte during the dialog with Mr. Wright reinforces the court's conclusion that the statement relied upon by the Commission as evidence of a lack of an adverse impact on the affordable housing development, i.e., Attorney Conte's statement that there is no impact, was a misunderstanding of the question. Second, the dialog between Attorney Conte and Mr. Wright establishes that at the time of the public hearing, the plaintiffs were not, nor could there be a reasonable expectation that they would be prepared to discuss the possible ramification to the project if the Commission approved the application with restrictions. Saranor Apartments v. Planning Zoning,
supra, Superior Court, Docket No. 52740.
 Conclusion
Neither the record nor the trial of this appeal provides a basis upon which the court can conclude that the Commission's approval with restrictions affected the plaintiffs' proposed development in such a way as to make it untenable. The plaintiffs, therefore, failed to meet the statutory requirements to appeal. Furthermore, for the same reason that the court could not find that the plaintiffs met the statutory requirements to prosecute this appeal, the court finds that the plaintiffs are not aggrieved. The plaintiffs contend that in approving the application with restrictions, the Commission, "in effect . . . denied the application since a two unit, all affordable development is obviously economically unfeasible. . . ." While it may be obvious to the plaintiffs that a two-unit all affordable development is economically unfeasible, it does not relieve the plaintiffs' burden to produce evidence to that effect to establish that they have standing. Accordingly, as a lack of standing implicates the court's subject matter jurisdiction, the present appeal is dismissed.
Robaina, J.