[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Pursuant to General Statutes § 8-30g. the plaintiff, Ridgely Whitmore Brown, appeals decisions of the Darien Planning and Zoning Commission (the commission) to deny Brown's application for a zone change and Brown's modification. In his original application, Brown sought a zone change to allow the construction of an affordable housing development in accordance with § 8-30g to include approximately thirty-two units. In his modified application, Brown provided further detail, submitting dimension requirements that would restrict front and side yard areas and building height, provide a minimum number of parking spaces, and establish a maximum number of dwelling units. Brown appeals on the grounds that the commission acted illegally, arbitrarily and in abuse of its discretion in that the commission ignored the town plan as it pertains to affordable housing; the commission lacked sufficient evidence to support its reasons for denial; the commission failed to show that its decision was necessary to protect a substantial interest in health, safety or any other matter the commission may legally consider; the commission cannot show that such an interest clearly outweighs the need for affordable housing; the commission failed to make reasonable changes to the application and cannot sustain its burden of showing that such interest cannot be protected by reasonable changes to the application; the commission failed to meet its obligations pursuant to General Statutes § 8-30g; and the commission deprived Brown of due process by failing to allow him an opportunity to cross-examine witnesses and the originators of reports and documents in the record.[1] Both the commission and Brown have filed briefs.
 PROCEDURAL HISTORY
On December 19, 1997, Brown filed his original application for a zone change. (Return of Record [ROR], Items 1 and 2.) The commission held a public hearing on the application on January 27, 1998; (ROR, Items 66 and CT Page 10750 76); which was continued on February 24, 1998; (ROR, Items 67 and 77). The commission decided to deny the application in a resolution dated April 21, 1998. (ROR, Items 63 and 68.) The commission published notice of the decision on April 30, 1998. (ROR, Item 65.) Brown filed a modification pursuant to General Statutes § 8-30g (d) on May 15, 1998. (ROR, Item B.) On June 9, 1998, the commission held a public hearing on Brown's modified application. (ROR, Items BB and GG.[2]) The commission denied the application in a resolution dated June 23, 1998. (ROR, Items Y and CC.) The commission published notice of its decision on July 2, 1998. (ROR, Item AA.) Brown commenced this appeal by service of process on the commission, its chair and the town clerk on July 17, 1998. (Sheriff's Returns.)
 FACTS
Brown owns a parcel known as 25 Brookside Road in Darien, Connecticut. The property is partially zoned commercial with "a multiple family zoning overlay on the west side." (Amended Complaint, ¶ 2.) Brown submitted an application to rezone the 25 Brookfield Road property to allow approximately 32 housing units to be constructed, twenty-five percent of which would be affordable pursuant to General Statutes § 8-30g. (ROR, Item 2.) The commission denied the application on the grounds that the proposed zone change failed to account adequately for access, egress and traffic safety; proper grading of accessways and required second access; a sight line at the corner; pedestrian safety; protection of wetlands; prevention of flood drainage; setbacks; reasonable building coverage; usable land and density per acre; reasonable building height; adequate parking; a reasonable minimum lot size; and compliance with affordable housing statutes. (ROR, Items 63 and 68.)
The commission thereafter denied Brown's proposed modification, which Brown submitted pursuant to General Statutes § 8-30g. The commission denied the modification on the grounds that Brown failed to address health and safety concerns specific to the parcel; failed to provide a minimum lot area; failed to provide a minimum lot width and depth; failed to establish a minimum lot frontage along a street; failed to establish setbacks for the front and side yards; established a maximum height that was excessive in relation to the other buildings in the area; failed to provide a maximum building coverage; eliminated the requirement of a minimum front landscaped depth; eliminated the maximum allowable site development; provided for inadequate parking at the rate of one space per dwelling unit; proposed a zone change that would allow too great a density of development; and failed to address issues raised by the earlier resolution, such as access problems, sight lines, pedestrian safety and parking within the flood hazard area. (ROR, Items Y and CC.) CT Page 10751
Brown appeals the commission's decisions to deny the application and the modification.
 AGGRIEVEMENT
Brown's application proposes a zone change to allow the development of a "C.G.S. Section 8-30g affordable housing project — 25% affordable — 30 year restriction — statewide income guidelines — possibly to same approximate height as nursing home — ± 32 units." (ROR, Item 2.) The denial of this application gives Brown standing to have his appeal pursuant treated to § 8-30g.
Brown alleges that he "is aggrieved by the Darien PZ decision in that he is the title record owner of the property which is the subject of the application and the denials deprive him of his full desired use of his own property." (Amended Complaint, ¶ 8.) "Except as otherwise provided in [§ 8-30g], appeals involving an affordable housing application shall proceed in conformance with the provisions of . . . sections 8-8, 8-9, 8-28, 8-30, or 8-30a, as applicable." General Statutes § 8-30g (b). "[E]ven though the word "aggrieved' was not used by the legislature, Connecticut common law applies to these appeals." Frumentov. Planning Zoning Commission, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 395813 (July 21, 1993,Berger, J.); Vineyard Construction Management Corp. v. Trumbull, Superior Court, judicial district of New Britain, Docket No. 492251 (July 23, 1999, Koletsky, J.). A person is aggrieved if he is affected "directly or in relation to a specific, personal and legal interest in the subject matter of the decision, . . . [and is] specifically and injuriously affected as to property or other legal rights. . . ." Smith v. Planning Zoning Board, 203 Conn. 317, 321, 524 A.2d 1128 (1987). Brown's ownership of the subject property was proven at the hearings before this court on August 28, 2000. As the owner whose application has been denied; (ROR, Item 2); Brown is aggrieved.
 SCOPE AND STANDARD OF JUDICIAL REVIEW
Section 8-30g provides the standard of review for affordable housing appeals. "[T]he burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission that (1)(A) the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record (B) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (C) such public interests clearly outweigh the need for affordable housing; and (D) such public interests cannot be protected by reasonable changes to the affordable housing development. . . ." General Statutes § 8-30g
CT Page 10752 (c). The statute "requires the town, not the applicant, to marshal the evidence supporting its decision and to persuade the court that there is sufficient evidence in the record to support the town's decision and the reasons given for that decision." (Emphasis in original.) ChristianActivities Council, Congregational v. Town Council, 249 Conn. 566, 576,735 A.2d 231 (1999).
The commission must show by "sufficient evidence"; General Statutes § 8-30g(c)(1)(A); that "the record before the [commission] support[ed] the decision reached . . . and that the commission did not act arbitrarily . . . illegally . . . or in abuse of discretion." (Citation omitted; internal quotation marks omitted.) Id., 585. Sufficient evidence is "less than a preponderance of the evidence, but more than a mere possibility. . . . [T]he zoning commission need not establish that the effects it sought to avoid by denying the application are definite or more likely than not to occur, but that such evidence must establish more than a mere possibility of such occurrence. . . . Thus, the commission [is] required to show a reasonable basis in the record for [its conclusions]. The record, therefore, must contain evidence concerning the potential harm that would result if the zone were changed . . . and concerning the probability that such harm in fact would occur." (Citation omitted; internal quotation marks omitted.) Id.
This "sufficient evidence" standard applies to all four prongs of the test enunciated in General Statutes § 8-30g(c)(1). See id., 589. The commission bears the burden, therefore, of showing, by sufficient evidence, that (A) the record supports the reasons it articulated for denying the application and modification, (B) the decisions were necessary to protect a substantial public interest in health, safety or some other matter that the commission may legally consider, (C) the substantial public interest outweighs the need for affordable housing, and (D) the interest cannot be protected by reasonable changes to the application or modification. See General Statutes § 8-30g(c)(1);Christian Activities Council, Congregational v. Town Council, supra,249 Conn. 579.
 DISCUSSION
Our Supreme Court has concluded that the appeals procedure of General Statutes § 8-30g applies to a commission's "legislative decision to grant or deny a zone change." West Hartford Interfaith Coalition, Inc.v. Town Council, 228 Conn. 498, 508, 636 A.2d 1342 (1994). The commission argues that "[a]lthough this application was made in the affordable housing context, nonetheless the Commission's standards and criteria for a zone change under Conn. Gen. Stat. § 8-2 still govern." (Commission's Brief. p. 32.) Specifically, the commission argues that, CT Page 10753 "[d]ue to the lack of information provided about either the feasibility of the density of development sought or the zone change proposed, the commission could not conclude, as it had to before it could act under Conn. Gen. Stat. § 8-2, that the change sought served the public interest and welfare." (Commission's Brief, pp. 34-35.) The commission further argues that "the application . . . sought no regulatory limits on minimum lot area, minimum lot width, minimum lot frontage, minimum lot depth, minimum rear yard, maximum building coverage and maximum landscape depth." (Commission's Brief, p. 35, citing ROR, Exhibit E.) The commission argues that, despite its requests for more specific and realistic standards for zoning of the site, Brown's proposals in his modification "either flouted or exacerbated these deficiencies," for instance by increasing the proposed density of site development. (Commission's Brief, p. 35.)
Brown argues that, pursuant to General Statutes § 8-30g, the commission bears the burden of proving its reasons for denial. (Brown's Brief, pp. 8-9.) Brown argues that the commission must, if an application made under the statute is inadequate, "impose conditions upon the granting of the permits designed to ensure that affordable housing in compliance with the statutory scheme is actually developed." (Brown's Brief, p. 9.) Brown argues that the information the commission requested is not required by the regulations because the application is for a zone change rather than for a special permit or site plan approval.
Brown's initial application for a zone change contains a letter indicating that it is "a simple application pursuant to Connecticut General Statutes § 8-30g for a zone change which would permit the construction of as many as 32 units. There are a number of possible projects that could be constructed pursuant to the simple zone change request for this property." (ROR, Item 1.) The application form provides the following summary of the proposed activity: "C.G.S. Section 8-30g
affordable housing project — 25% affordable — 30 year restriction — statewide income guidelines — possibly to same approximate height as nursing home — ± 32 units." (ROR, Item 2.) Brown left blank all other spaces on the application form. Brown submitted a site plan, but labeled it, "Not Proposal — FYI — Something that could be built." (ROR, Item 72.) Brown also provided a copy of a map showing the parcel that is the subject of the proposed zone change; (ROR, Item 69); and a copy of a development agreement with the owner of the neighboring property; (ROR, Item 2).
The commission denied the application on multiple grounds, many of which relate to the inadequacy of the information provided by Brown. For instance, the commission concluded that "[w]ithout a traffic study it cannot be determined how much volume will be added nor can the full CT Page 10754 impact on the existing turning problems, queuing and accident level be determined beyond what is obvious: substantial increased hazards." (ROR, Items 63, p. 6, and 68, p. 8.) It also concluded that "[w]ith as many as 32 units proposed on this site, and with the significant lack of information furnished by the applicant, it is impossible to determine how any meaningful setback could realistically be achieved." (ROR, Items 63, p. 8, and 68. p. 10.) The commission stated in its resolution that "[m]any of [its] concerns are based upon substantial and significant safety and health factors including; the need for safe access and egress; two means of access for emergency vehicles, equipment and personnel; sight lines; pedestrian safety; impacts upon the wetlands, flooding and flood plain; and other design features which would be shown on a site plan. In view of the fact that no site plan was submitted, the Commission is unable to make modifications to that site plan. . . . With the presence of the watercourse, wetlands, the floodway, the flood plain as well as significant changes in grade, the feasibility of the placement of density ranging from thirty-two units on down to one unit, can only be analyzed after the proposed development is described by the applicant in detail. The Commission does not believe that it has an obligation to design this multi-family residential project or to speculate as to what lesser density would be feasible based upon the sparse information provided by the applicant." (ROR, Items 63, pp. 12-13, and 68, pp. 14-15.)
Darien's zoning regulations provide that before an application requesting an amendment to the zoning map may be submitted to the commission, the applicant must provide "a metes and bounds description of the land to be included in the amendment," seven copies of a map showing all property within 500 feet of the subject property, an indication of the "location, size and use of existing structures within the area of proposed change," and a list of all property owners required to receive notice of the proposal. (ROR, Item 78, Zoning Regulations § 1112.1.) Brown has provided maps indicating the metes and bounds of the property; (ROR, Item 69); has described and videotaped the structure existing on the site; (ROR, Items 76, pp. 5-7, and HH); and has provided a list of property owners owed notice; (ROR, Items 27 and N). Brown admits that he has failed to provide the map of surrounding properties, but argues that the video tape he submitted, in addition to the town's own zoning records, establishes the lay of the land, including structures on surrounding properties. (Brown's Brief, p. 5.)
In addition to the requirements of the regulations, "zoning commissions, before acting on a zone change application, may also ask an applicant to submit additional information during the course of hearings on the application." Kaufman v. Zoning Commission, 232 Conn. 122, 132,653 A.2d 798 (1995). "[D]uring the hearings on an application, a zoning commission undoubtedly is entitled, within the constraints imposed by its CT Page 10755 regulations, to require an applicant to provide whatever additional information the commission needs to fulfill its duties." Id., 141.
Brown's proposal would not change the zone from one existing zone designation to another; rather, it creates an entirely new zone classification. Compare with Kaufman v. Zoning Commission, supra,232 Conn. 122 (application in Danbury to change zone to RA-8 zone, which allowed five single-family dwellings per acre). The original application provided no specific bulk requirements for the proposed zone; the modification provided more specifics, but left most zoning criteria open-ended. (ROR, Items E and P.) The bulk requirements proposed by the modification are as follows:
 "1. Minimum Lot Area None "2. Minimum Lot Width None "3. Minimum Lot Frontage None "4. Minimum Lot Depth None "5. Minimum Front Yard 10' "6. Minimum Side Yard 5' "6A. Total of Two "7. Minimum Rear Yard None "8. Maximum Height in Stories 5 "9. Maximum Height in Feet 70' from street level "10. Maximum Building Coverage None "11. Maximum Front Landscape Depth None "12. Maximum Developed Site Area None "13. Maximum Floor Area of each Dwelling Unit None "14. Parking 1 space per unit and developer may restrict up to 50% of units from owning vehicles. "15. Structural Parking Permitted "16. Dwelling Units Per Acre 40"
(ROR, Item P.)
It is the holding of this court that the commission need not make such modifications to this zone as to do Brown's work for him. As in IndianRiver Associates v. Planning Zoning Commission, Superior Court, judicial district of Hartford, Docket No. 392496 (May 11, 1992, Berger,J.) (6 Conn.L.Rptr. 372). "the Commission was presented with an application which it, inter alia, believed to be defective by not providing specific standards or sufficient information." Id., 376. As here, the record in Indian River included no traffic study and the application failed to restrict the density of development in light of the presence of wetlands on the site. See id. There, the court, Berger, J., CT Page 10756 concluded that interests raised before the commission, including traffic and density interests, outweighed the need for affordable housing based upon the record because the record lacked evidence that the health and safety concerns raised could be satisfactorily resolved. See id.
The record in this case reveals concerns with regard to the proposed zone change that are similar to those raised in Indian River Associatesv. Planning Zoning Commission, supra, 6 Conn.L.Rptr. 376. David Keating, the assistant director and zoning enforcement officer of Darien's planning and zoning department, raised multiple concerns about the application and the modification, including the impact of the proposal on wetlands on or near the subject property; the potential for flooding at the site; the density of the proposed zone; traffic safety, sight lines and access to the site; the inadequacy of setbacks; pedestrian safety; the lack of meaningful bulk requirements for the zone; the inadequacy of parking; fire safety; and the lack of adequate specificity in the proposed application. (ROR, Items 50 and J.) The commission also received a letter from the town historian urging the commission to prevent the dismantling of the Silvanus Weed house, which stands on the subject property and which is on the National Register of Historic Places. (ROR, Item 26.) The town's department of environmental protection voiced concern about the density of the development on abutting wetlands. (ROR, Item 38.) In addition, the fire marshal indicated as to the original application that certain precautions would be necessary, such as a sprinkler system and a secondary access for fire department vehicles. (ROR, Item 11.) As to the modification, which provided more specific information about the proposed development, the fire marshal wrote the following comments: "Need detailed plans — Proposed 70' high buildings — We're concerned for fire department rescue — Same comments from original application still apply." (ROR, Item H.)
Brown did not provide evidence that there are feasible solutions to the problems raised by the commission; rather, he argues that the commission should resolve these problems by imposing conditions as necessary pursuant to § 8-30g(c)(1)(D). (Brown's Brief, p. 15), citing Kaufmanv. Zoning Commission, 232 Conn. 146-48. Brown stated at the public hearing on his original application that "the burden is not on the applicant to prove anything. . . . The burden of proof is on the commission basically when these applications are filed to meet certain criteria. So for instance, it's insanity on an ordinary application to come in without a traffic study, but on an application under this statutory section where your Town Plan has acceptable levels of service for all the immediately contiguous streets, I can come in and point that out and it's a pretty simple thing. If somebody has a traffic study to contradict the Town Plan, then the burden would be on them to demonstrate CT Page 10757 that." (ROR, Item 76, pp. 39-40.) "[W]ith this application under this statutory scheme I can ask for a general decision and not have the burden of proof that I would have basically with a whole sales presentation. . . . . I am coming in under a different statutory section and I don't have all the professionals. . . ." (ROR, Item 76, p. 45.) Brown stated, "I would hope that you [the commission] have enough basic information to make the basic zone change decision and the details would be provided in a site plan with ingress, egress, the fire code issues and all that addressed." (ROR, Item 76, p. 46.) He also admitted that his application was "filed not only in the hope of getting an approval, but also in order to elicit from the various agencies and professionals and the commission, itself, information which [he] could then use efficiently and quickly in a perfect world for Ridge Brown to submit a site plan application. . . ." (ROR, Item 76, p. 33.)
While it is true that the commission has the burden of demonstrating that reasonable changes to the application cannot protect the public interests raised; see General Statutes § 8-30g(c)(1)(D); it is not reasonable to require the commission to independently research all health and safety issues to create a new zone for Brown in compliance with Brown's concept. Further, the zone proposed in Brown's modification, which allows unlimited building coverage and an unlimited area of site development on a parcel of less than one acre, is inadequate to address the concerns raised on the record. An approval of the zone change as requested would mean that the commission would have no meaningful standards by which to review any subsequent site plans, except for those contained in state regulations. The court finds that the commission "acted reasonably and appropriately in demanding that its questions be answered," as in Ensign-Bickford Realty Corp. v. Zoning Commission, Superior Court, judicial district of Hartford, Docket no. 544054 (December 16, 1996, Mottolese, J.), aff'd on other grounds, 245 Conn. 257,715 A.2d 701 (1998), where the commission requested additional information in response to evidence of contamination on abutting land. It is found, therefore, that the record, by sufficient evidence, supports the commission's conclusion that there are substantial interests in safety that, based on the record before it, outweigh the need for affordable housing. See General Statutes § 8-30g(c)(1)(A)-(C).
Koletsky, J.